```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LAVOHO, LLC, successor in interest to    :
DIESEL EBOOKS, LLC,                      :
                                         :       14cv1768 (DLC)
               Plaintiff,                :
                                         :
          -v-                            :
                                         :
APPLE INC.; HACHETTE BOOK GROUP, INC.;   :
HARPERCOLLINS PUBLISHERS, LLC,;          :
VERLAGSGRUPPE GEORG VON HOLTZBRINCK      :
GHBH; HOLTZBRINCK PUBLISHERS, LLC,       :
d/b/a MACMILLAN; THE PENGUIN GROUP, A    :
DIVISION OF PEARSON PLC; and SIMON &     :
SCHUSTER, INC.,                          :
                                         :
               Defendants.               :
                                         :
---------------------------------------- X
ABBEY HOUSE MEDIA, INC., d/b/a           :
BOOKSONBOARD,                            :
                                         :
                                         :       14cv2000 (DLC)
               Plaintiff,                :
                                         :
          -v-                            :
                                         :       OPINION & ORDER
APPLE INC.; HACHETTE BOOK GROUP, INC.;   :
HARPERCOLLINS PUBLISHERS, LLC,;          :
VERLAGSGRUPPE GEORG VON HOLTZBRINCK      :
GHBH; HOLTZBRINCK PUBLISHERS, LLC,       :
d/b/a MACMILLAN; THE PENGUIN GROUP, A    :
DIVISION OF PEARSON PLC; and SIMON &     :
SCHUSTER, INC.,                          :
                                         :
               Defendants.               :
                                         :
---------------------------------------- X
```

APPEARANCES:
<u>For Plaintiffs</u>
Maxwell M. Blecher
Jordan L. Ludwig
Blecher Collins Pepperman & Joy P.C.
515 Figueroa St., Suite 1759
Los Angeles, CA 90071

Eric M. Creizman
Creizman PLLC
565 Fifth Ave., 7th Floor
New York, NY 10012

For Defendant Apple Inc.
Theodore J. Boutrous , Jr.
Daniel G. Swanson
Gibson, Dunn & Crutcher LLP (LA)
333 S. Grand Avenue, Suite 4600
Los Angeles, CA 90071

Cynthia E. Richman
Gibson, Dunn & Crutcher, LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Lawrence Jay Zweifach
Gibson, Dunn & Crutcher, LLP
200 Park Avenue, 48th Floor
New York, NY 10166

For Defendant Hachette Book Group, Inc.
Michael Lacovara
Samuel Joseph Rubin
Walter B. Stuart , IV
Richard Sutton Snyder , Sr.
Freshfields Bruckhaus Deringer LLP
601 Lexington Avenue
New York, NY 10022

For Defendant HarperCollins Publishers, LLC
Charles Scott Lent
Arnold & Porter, LLP
399 Park Avenue
New York, NY 10022

For Defendants Holtzbrinck Publishers, LLC and Verlagsgruppe Georg Von Holtzbrinck GMBH:
John J. Lavelle
Joel M. Mitnick
Dorothy Ruolan Du
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019

For Defendant The Penguin Group:
Amanda Christine Croushore
Saul P. Morganstern
Kaye Scholer LLP
425 Park Ave.
New York, NY 10022

For Defendant Simon & Schuster, Inc.:
Yehuda Lev Buchweitz
James W. Quinn
Jeffrey Leonard White
Weil, Gotshal & Manges LLP
767 Fifth Avenue, 25th Fl.
New York, NY 10153

DENISE COTE, District Judge:

Two domestic plaintiffs seek recovery of damages from their foreign sales of e-books. They allege that the defendants, all domestic corporations, entered into a price-fixing conspiracy that injured the plaintiffs' ability to compete not only in this country but also abroad. For the following reasons, the plaintiffs are permitted to amend their complaints to plead damages in the form of lost profits from domestic and foreign sales of e-books.

## BACKGROUND

These actions arise out of a conspiracy to raise the price of e-books. The facts underlying the antitrust claims are described in detail in prior Opinions issued by this Court and familiarity with them is assumed. See, e.g., DNAML Pty., Ltd. v. Apple, Inc., 13cv6516 (DLC), 2014 WL 2535113 (S.D.N.Y. June 5, 2014); United States v. Apple Inc., 952 F. Supp. 2d 638 (S.D.N.Y.

2013).

The facts may be briefly summarized as follows.  Five major American publishers and Apple Inc. ("Apple"), which is also a domestic corporation, conspired in late 2009 and early 2010 to raise the price of e-books.  This was accomplished by, inter alia, imposing agency agreements on e-book retailers.  The agency agreements wrested control over retail pricing of e-books from retailers.  The publishers then raised the retail prices for their e-books and sold the e-books directly to consumers, using the e-retailers as their agents and paying those e-retailers a commission on the sales of the e-books.

The plaintiffs are e-book retailers who did not have a dedicated e-reader and had relied on a business model that allowed them to compete with other e-retailers by discounting.  With the advent of the agency model, the plaintiffs could no longer compete on price.  Eventually, they went out of business.

There are no facts alleged in either complaint regarding foreign sales and neither complaint makes an explicit request for damages based on foreign sales.  In a series of short letters from September 26 to October 17, 2014, however, the plaintiffs and defendants have debated whether the plaintiffs may nonetheless recover damages based on a theory of lost foreign sales.  The founder of BooksOnBoard, Robert LiVosi, states that when the agency agreements were initially imposed on it, they did

not cover sales in foreign territories with a single exception. The exception was the agreement with Harper Collins, which applied to sales in both the United States and Canada. Eventually, foreign affiliates of the publisher defendants imposed agency agreements on BooksOnBoard to cover sales in foreign territories.

This correspondence was prompted by a decision issued in a related action brought by a foreign e-retailer against the same five publishers and Apple alleging harm premised on the same price-fixing conspiracy. In DNAML, this Court largely denied the defendants' motion to dismiss. DNAML, 2014 WL 2535113. Based on the agreement of the plaintiff and defendants in that action, however, any claims by that foreign plaintiff arising from lost foreign sales of e-books were dismissed. Id. at *3, *3 n.2. While the parties in the two instant actions stipulated on June 20 that the DNAML decision would apply generally to the complaints filed in these two actions, the plaintiffs reserved their right to argue that they could recover on claims arising from sales "between the United States and foreign countries." They agreed to dismiss with prejudice, however, any claims arising from sales made from a base abroad to customers in foreign countries.

Since the complaints in these actions do not give the defendants fair notice of any claim for lost foreign sales, this

correspondence shall be treated as a request for leave to amend the complaints to bring such claims.  For the following reasons, the request is granted.

## DISCUSSION

The Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a, governs the application of United States antitrust law to foreign commerce.  The FTAIA "excludes from the Sherman Act's reach much anticompetitive conduct that causes only foreign injury."  F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 158 (2004).  In passing this legislation, Congress sought "to boost American exports by making clear to American exporters (and to firms doing business abroad) that the Sherman Act does not prevent them from entering into business arrangements (say, joint-selling arrangements), however anticompetitive, as long as those arrangements adversely affect only foreign markets."  Lotes Co., Ltd. v. Hon Hai Precision Indus. Co., 753 F.3d 395, 404 (2d Cir. 2014) (citation omitted).

The FTAIA provides that the antitrust laws

shall not apply to conduct involving trade or commerce
(other than import trade or import commerce) with
foreign nations unless –
(1) such conduct has a direct, substantial, and
reasonably foreseeable effect—
    (A) on trade or commerce which is not trade or
    commerce with foreign nations, or on import trade
    or import commerce with foreign nations; or
    (B) on export trade or export commerce with
    foreign nations, of a person engaged in such trade
    or commerce in the United States; and

6

>
> (2) such effect gives rise to a claim under the
> provisions of sections 1 to 7 of this title, other than
> this section . . . .

15 U.S.C. § 6a.

The Court of Appeals for the Second Circuit has recently construed the FTAIA and clarified that the "foreign anticompetitive conduct can have a statutorily required direct, substantial, and reasonably foreseeable effect on U.S. domestic or import commerce . . . so long as there is a reasonably proximate causal nexus between the conduct and the effect." Lotes, 753 F.3d at 398 (citation omitted).  Thus, while the FTAIA "generally excludes wholly foreign conduct from the reach of the Sherman Act, [it] brings such conduct back within the statute's scope where two requirements are met: (1) the foreign conduct has a direct, substantial, and reasonably foreseeable effect on U.S. domestic, import, or certain export commerce; and (2) that effect gives rise to a claim under the Sherman Act." Id. at 413-14 (citation omitted).  In connection with this second requirement, it is important to focus on the cause of the injury which the plaintiff asserts.  The "domestic effect must proximately cause the plaintiff's injury." Id. at 414.

The conduct here is not "wholly foreign conduct." Lotes, 753 F.3d at 413.  It is a price-fixing conspiracy hatched in the United States by American companies that allegedly affected the foreign sales of e-books by American companies.  To the extent

that the plaintiffs are pursuing claims related to the sales (or lost sales) of e-books to foreign consumers, then their claims must meet the requirements of the FTAIA.  Accordingly, they will not be able to pursue such claims unless one of the exceptions established by the FTAIA applies.

An exception delineated in the FTAIA which may apply is the exception for export trade.  The FTAIA provides that American antitrust law will apply to anticompetitive conduct in foreign countries where the conduct involving foreign trade "has a direct, substantial and reasonably foreseeable effect . . . on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States."  Id. at (1)(B).  The parties do not appear to dispute that the plaintiffs are engaged in "export commerce" in the United States.  Accordingly, to bring a claim based on foreign sales the plaintiffs must be able to allege that the price-fixing conspiracy at issue involved foreign trade, that that conspiracy had a direct effect on export transactions in which the plaintiffs were engaged, and that that effect caused the injury on which their claims are premised.  See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 796 n.23 (1993) ("The FTAIA . . . exempt[s] from the Sherman Act export transactions that did not injure the United States economy.").  As the Supreme Court observed in F. Hoffmann-La Roche, the Sherman Act does not

8

prevent American exporters from entering into anticompetitive arrangements "as long as those arrangements adversely affect only foreign markets."  F. Hoffman-La Roche, 542 U.S. at 161.  It does not remove from the statute's reach, however, those anticompetitive activities that adversely affect the "exporting activities" of those engaged in the export business "within the United States."  Id.

The FTAIA does not define export trade, much less how one identifies such trade in connection with digital transactions.  "Export commerce" is generally understood to be commerce between a United States seller and foreign buyer in which the goods flow from the United States to a foreign country.  IB Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law 304 (4th ed. 2013). Because of the FTAIA, higher prices paid by foreign consumers are not covered by U.S. antitrust law unless there is a sufficiently significant and direct effect on the domestic market place.  Id. In appropriate circumstances, the failure of an exporter's business may have a significant effect on a U.S. export market. See Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 712 (5th Cir. 1999) (finding that the failure of plaintiff's business, along with eighty other businesses, constituted a prima facie showing of a significant effect on the U.S. export market).

**CONCLUSION**

The plaintiffs shall be permitted to amend their complaints to allege damages stemming from foreign sales and the loss of such sales without prejudice to the defendants' right to move to dismiss such claims. A scheduling order for the amendment accompanies this Opinion.

Dated:   New York, New York
         December 3, 2014

```
                              _____
                                    DENISE COTE
                              United States District Judge
```